UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JAMES STEWART,

                Plaintiff,

v.

UNKNOWN MONTIE et al.,

                Defendants.

_____/

Case No. 2:21-cv-200

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 4.)  Plaintiff previously sought and was granted leave to proceed *in forma pauperis*.  (ECF No. 7.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss the following claims:

1.     Plaintiff's claim that Defendants Montie, Quinn, Duncan, and Smith denied Plaintiff medical care on July 30, 2021;

2.     Plaintiff's claim that Defendant Stranaly did not respond to Plaintiff's health care kites on July 31, August 1, August 2, and August 3, 2021;

3.     Plaintiff's claim that Defendants Quinn, Meyers, Smith, and Smart refused Plaintiff medical attention on August 16, 2021;

4.     Plaintiff's claim that Defendant Quinn prevented Plaintiff from conducting a religious ritual and disrespected Plaintiff's religion on July 30, 2021;

5.     Plaintiff's claim that Defendant Quinn fabricated a "disobeying a direct order" misconduct and Plaintiff was found not guilty on August 6, 2021;

6.     Plaintiff's claim that Defendant Schrovenwever refused Plaintiff a food tray on August 8, 2021;

7.     Plaintiff's claim that Defendants Quinn, Casey, Perry, and Schrovenwever refused Plaintiff a shower on August 20, 2021, after Plaintiff had not showered for a week; and

8.     Plaintiff's claim that Defendant Quinn informed Plaintiff that Defendant Quinn threw away Plaintiff's mail and returned books mailed to Plaintiff to the mailroom.

Plaintiff's Eighth Amendment excessive force claims against Defendants Montie and Iordson remain.  The Court will also deny Plaintiff's motion to appoint counsel.  (ECF No. 8.)

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan.  The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.  Plaintiff sues Lieutenant Unknown Montie; Corrections Officers Unknown Schrovenwever, Unknown Quinn, Unknown Iordson, Unknown Smith, Unknown Perry, Unknown Casey, Unknown Meyers, and Unknown Smart; and Nurses Ressie Stranaly and Nelson Duncan.

Plaintiff alleges that on July 30, 2021, Defendant Montie slammed the food slot on Plaintiff's left arm and held it there, and that Defendant Iordson tased his left hand.[1]  (ECF No. 1, PageID.2.)  Plaintiff claims that on July 30, 2021, he asked Defendants Montie, Quinn, Duncan, and Smith for medical services for swelling in his left arm—presumably related to the slamming and the tasing—and was refused.  (*Id.*, PageID.3.)

Plaintiff alleges that on July 30, 2021, Defendant Quinn "fabricated a disobeying a direct order misconduct" for which he was found not guilty.  (*Id.*, PageID.2.)  He alleges further that on that same date, Defendant Quinn prohibited him from cleaning up toilet water on the floor of his cell, which prevented him from "conducting [his] ritual for religion."  (*Id.*, PageID.3.)  Plaintiff claims that Defendant Quinn also disrespected his religion by not allowing him to conduct his ritual and by saying, "f*** your religion.  F*** Lilith."  (*Id.*)  Plaintiff also claims that Defendant Quinn discriminated against Plaintiff because he is a Luciferian.  (*Id.*, PageID.4.)  Plaintiff claims that on August 20, 2021, Defendant Quinn "told [him] he [threw his] mail away and sen[t] [his] books back to the mail room."  (*Id.*, PageID.3.)  Plaintiff contends that Defendants Quinn and Smart are liable for destroying Plaintiff's property.  (*Id.*, PageID.3–4.)

Plaintiff goes on to assert that from July 31, 2021, until August 3, 2021, Defendant Stranaly "took [his] healthcare [kites]" but Plaintiff got no response to them.  (*Id.*)  He claims that on August 8, 2021, Defendant Schrovenwever refused him a food tray.  (*Id.*)  On August 16, 2021, Defendants Quinn, Meyers, Smith, and Smart refused Plaintiff medical care for chest pains.  (*Id.*)  Plaintiff alleges that on August 20, 2021, Defendants Quinn, Casey, Perry, and Schrovenwever refused him a shower even though Plaintiff had not been permitted to shower for a week.  (*Id.*)

---

[1] Plaintiff endured a very similar incident on September 24, 2020.  *Stewart v. Rush*, No. 2:21-cv-101 (W.D. Mich.) (Compl., ECF No. 1, PageID.4) (alleging that Defendant Bernhardt punched and kneed Plaintiff's arm, which was apparently through the food slot, and Defendant Rush tased his arm).

Plaintiff seeks declaratory relief, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.3–4.)

## II.      Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (ECF No. 8.) He asserts that the issues in this matter are complex and "will require significant research and investigation." (*Id.*, PageID.49.) Plaintiff argues that he "has limited access to the law library and limited knowledge of the law." (*Id.*) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court, therefore, will deny Plaintiff's motion to appoint counsel. (ECF No. 8.)

## III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Here, Plaintiff's allegations suggest that Defendants may have violated his First, Eighth and Fourteenth Amendment rights.

In Plaintiff's complaint he raises 23 separate claims in 26 terse one-sentence paragraphs.  To the extent there is tension between the command of Federal Rule of Civil

Procedure 8, to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and the requirement of *Twombly* to provide "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, Plaintiff has erred on the side of "short" at the risk of failing to show that he is entitled to relief or stating a plausible claim. The allegations are so conclusory and the facts alleged so scant that only very liberal construction permits the conclusion that Plaintiff has stated any claim at all.

### A.      Excessive Force

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).  Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

But not every shove or restraint gives rise to a constitutional violation.  *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotations omitted)).  "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631

F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995);

*Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth

Amendment claim.  *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v.

McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).  First, "[t]he subjective component focuses on the

state of mind of the prison officials."  *Williams*, 631 F.3d at 383.  Courts ask "whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm."  *Hudson*, 503 U.S. at 7.  Second, "[t]he objective component requires the pain

inflicted to be 'sufficiently serious.'"  *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501

U.S. 294, 298 (1991)).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments

necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided

that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson*, 503 U.S.

at 9 (internal quotations omitted).  The objective component requires a "contextual" investigation,

one that is "responsive to 'contemporary standards of decency.'"  *Id.* at 8 (quoting *Estelle v.

Gamble*, 429 U.S. 97, 103 (1976)).  While the extent of a prisoner's injury may help determine the

amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment

violation has occurred.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  "When prison officials

maliciously and sadistically use force to cause harm, contemporary standards of decency always

are violated . . . [w]hether or not significant injury is evident."  *Hudson*, 503 U.S. at 9.

Here, Plaintiff maintains that on July 30, 2021, Defendant Montie slammed his left

arm in the food slot, and Defendant Iordson tased his left hand.[2]  (ECF No. 1, PageID.2.)  Plaintiff

---

[2] The scant facts provided by Plaintiff beg the question: what was Plaintiff's arm doing outside his cell through the
food slot in the first place?  The question seems particularly germane because Plaintiff put his arm in that position just
a few months earlier and it produced exactly the same result.  *See Stewart v. Rush*, No. 2:21-cv-101 (W.D. Mich.)
(Compl., ECF No. 1, PageID.4) (alleging that Defendant Bernhardt punched and kneed Plaintiff's arm, which was

suggests that he suffered swelling from this alleged use of force.  (*Id.*, PageID.3.)  From these allegations, the Court concludes that Plaintiff has sufficiently stated Eighth Amendment excessive force claims against Defendants Montie and Iordson.

      **B.**     **Denial of Medical Care**

      The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle*, 429 U.S. at 103–04.  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Estelle*, 429 U.S. at 104–05.

      A claim for the deprivation of adequate medical care, like a claim for the use of excessive force, has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is

---

apparently through the food slot, and Defendant Rush tased his arm).  The likely explanation is that Plaintiff "took his food slot hostage."  An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot.  *See, e.g.*, *Earby v. Ray*, 47 F. App'x. 744, 745 (6th Cir. 2002).  It is against prison rules and a common form of prisoner misbehavior.  *See Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011), *report and recommendation adopted* 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011).  The fact that Plaintiff may have been engaged in misconduct does not foreclose the possibility that Defendants' response was excessive, but it does suggest that even if Plaintiff is not the sole author of his own misfortune, he may have written the first few sentences of the story.

obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what is detectable to the eye.  Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear.  *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer,* 511 U.S. at 835.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . :  A jury is entitled to 'conclude

that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"

*Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

### 1.   Plaintiff's Swollen Arm on July 30, 2021

Plaintiff's allegations regarding this claim consist, in their entirety, of the following:

> On July 30, 2021 I requested health care services from _____ as I had swelling to my left arm[; I] was refused.

(Compl., ECF No. 1, PageID.3.) Plaintiff repeats that allegation four times, filling in the blank with the names of Defendants Montie, Quinn, Duncan, and Smith.

10

Plaintiff does not allege that:  (1) he told the Defendants that his arm was swollen, (2) he showed the Defendants his arm, and (3) the swelling would have been obvious to these Defendants.  Rather, Plaintiff asserts only that he asked for health care services.  Nothing from the complaint suggests that any swelling on Plaintiff's arm was visible to these Defendants.

Moreover, Plaintiff does not allege facts from which the Court might infer that, even if the swelling were obvious, that the swelling demonstrated a serious need for medical treatment.  Superficial physical conditions, such as minor "cuts, bruising, and swelling," do not rise to the level of serious medical needs requiring medical treatment. *See Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013).

Although Plaintiff complains that he was not provided treatment, he does not suggest what treatment he required, nor does he suggest any consequence of not receiving treatment; consequences that might bolster his claim that treatment was obviously needed. Bruising and swelling are conditions that might well resolve on their own. *See, e.g.*, *Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020) (noting that it was "difficult to infer a serious medical needs from the facts Plaintiff ha[d] alleged . . . Plaintiff does not suggest that his bruising or headache did not resolve on their own").  Plaintiff's allegations, therefore, are insufficient to support an inference that he presented a serious medical need to Defendants Montie, Quinn, Duncan, and Smith for treatment.

Moreover, even if Plaintiff's condition was a serious medical need, such that Plaintiff adequately alleged the objective component, his allegations fall short with regard to the subjective component.  With respect to Defendants Montie, Quinn, Duncan, and Smith, Plaintiff states only that they refused his health care request.  Plaintiff provides no further explanation or facts regarding their denial of health care.

Plaintiff does not indicate whether he presented his requests at one time to all four Defendants or at different times sequentially, but Plaintiff presented the request to Nurse Duncan, who is a medical professional.  Although it is clear that Plaintiff disagreed with Defendant Duncan's treatment decision regarding his need, or lack thereof, for medical care for his arm, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983."  *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)).

Additionally, where a healthcare provider, such as Defendant Duncan, has determined that treatment is not necessary, the other officers' decisions to not call for healthcare assistance does not necessarily evidence deliberate indifference.  Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care.  *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (holding that a custody officer was entitled to rely on a medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell*, 867 F.2d at 959).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is

12

entitled to relief." *Iqbal*, 556 U.S. at 679.  There is nothing alleged in the complaint that might distinguish a deliberate indifference to Plaintiff's needs from simple negligence which *Farmer* has held is not enough for an Eighth Amendment claim.  *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Even if Plaintiff's swelling was, by definition, a serious medical need such that Plaintiff adequately alleged the objective component, Plaintiff's allegations fall short with respect to the subjective component.  Regarding Defendants Montie, Quinn, Duncan, and Smith, Plaintiff states only that they refused to provide treatment.  (ECF No. 1, PageID.3.)  While it is possible that the refusal to treat evidenced deliberate indifference, it is also possible that such refusal was the product of mere negligence.  As noted above, *Farmer* holds that mere negligence is not enough. Therefore, Plaintiff has failed to state a claim for deliberate indifference to a serious medical need. Accordingly, his Eighth Amendment claims against Defendants Montie, Quinn, Duncan, and Smith regarding the failure to provide medical care for his swollen left arm will be dismissed.

### 2.    Claims Against Defendant Stranaly

Plaintiff's allegations regarding this claim consist, in their entirety, of the following:

On _____ R/N Ressie Stranaly took health care kites and I got no response.

(Compl., ECF No. 1, PageID.3.)  Plaintiff repeats that allegation four times, filling in the blank with the dates July 31, August 1, August 2, and August 3, 2021.

There is nothing in the allegations to indicate that Plaintiff suffered a serious medical need, that he communicated that serious medical need to Defendant Stranaly, that Plaintiff was subject to a substantial risk of serious harm, or that Stranaly was aware of that risk and disregarded it.  Accordingly, Plaintiff's claim(s) against Defendant Stranaly will be dismissed.

### 3.      Denial of Care for Chest Pains

Plaintiff's allegations regarding this claim consist, in their entirety, of the following:

On August 16, 2021, _____ refused me medical attention when I stated I am having chest pains.

(Compl., ECF No. 1, PageID.3.)  Plaintiff repeats that allegation four times, filling in the blank with the names of Defendants Quinn, Meyers, Smith, and Smart.

Chest pain might well signal a serious medical need, but it also might not.  Here, Plaintiff only says that he told the Defendants that he was having chest pain.  Plaintiff does not actually say he suffered chest pain nor does he indicate the severity of the pain.  Plaintiff does not allege any facts from which the Court might infer that Plaintiff suffered a serious medical need. He does not describe any of the circumstances that day, he does not suggest what treatment he required, nor does he suggest any consequence of not receiving treatment, consequences that might bolster his claim that treatment was obviously needed.  Accordingly, Plaintiff's allegations do not show the objective component of a deliberate indifference claim.

Plaintiff also fails to allege facts from which the Court might infer that Defendants were aware that Plaintiff was subject to a substantial risk of serious harm or that Defendants disregarded such a risk.  *See Farmer*, 511 U.S. at 835 (finding that allegations of negligence are insufficient to state an Eighth Amendment claim).  Accordingly, Plaintiff's allegations do not show the subjective component of a deliberate indifference claim.  Plaintiff's "chest pain" claim will be dismissed.

### C.      Claims Regarding Conditions of Confinement

Plaintiff also claims that Defendant Schrovenwever denied Plaintiff food on one occasion and Defendants Quinn, Casey, Perry, and Schrovenwever refused Plaintiff a shower on

one day after he had already gone a week without a shower.  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

### 1.      Denial of a Shower

The Constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene.  Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (discussing temporary inconveniences generally); *see also Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (denial of shower and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993)

15

(concluding that an eleven-day stay in an unsanitary cell was not unconstitutional because of the relative brevity of the stay and availability of cleaning supplies); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

The refusal to allow the occasional shower constitutes a mere temporary inconvenience. *See Siller*, 2000 WL 145167, at *2; *Metcalf* 1998 WL 476254, at *2; *Evans v. Bruge*, No. 1:20-cv-833, 2020 WL 5742748, at *5 (W.D. Mich. Sept. 25, 2020) (finding the denial of two showers, one week apart, is a mere temporary inconvenience that does not violate the Eighth Amendment); *Rogers v. Mackie*, No. 1:20-cv-394, 2020 WL 3989432, at *8 (W.D. Mich. July 15, 2020) (finding the denial of soap and a shower for two days did not violate the Eighth Amendment); *Lewis v. Guinn*, No. 2:05-cv-287, 2006 WL 560648, at *4 (W.D. Mich. Mar. 3, 2006) (finding the deprivation of a single shower does not implicate the Eighth Amendment); *see also Barnett v. Fitz*, No. 1:19-cv-987, 2020 WL 205288, at *4 (W.D. Mich. Jan. 14, 2020) (holding that an allegation that the defendant "would skip [Plaintiff for] showers and gym time because [Plaintiff] wasn't at the door" did not permit a determination that the defendant deprived the plaintiff of hygiene and exercise within the meaning of the Eighth Amendment). Although Plaintiff's allegations support the inference that he was denied a shower for as long as 8 days, he only alleges that these Defendants were responsible for the denial on one of those days, the last one. Moreover, Plaintiff does not allege that he was denied the ability to maintain hygiene. Accordingly, his "shower" allegations do not rise to the level of an Eighth Amendment violation.

### 2. Denial of Meal Tray

"The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . .

food . . . ." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *see also Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (finding the deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (finding the denial of a few meals over several months does not state a claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (finding the deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim). Plaintiff's allegation that he missed one meal tray over a three-week period falls short of stating a claim under the objective prong of the deliberate-indifference standard. Consequently, Plaintiff does not state a plausible claim. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

### 3. Verbal Harassment

Plaintiff's complaints regarding Defendant Quinn's response to Plaintiff's religious practice on July 30, 2021, and his comments regarding Plaintiff's mail on August 20, 2021, implicate Plaintiff's First Amendment rights to freely exercise his religion and to mail

communications, both of which are addressed below; but Defendant Quinn's statements might also run afoul of Plaintiff's Eighth Amendment rights as a form of harassment.  Generally, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment.  *Ivey*, 832 F.2d at 955.  Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Id.*  Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude.  *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985).

Put simply, the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.  *See Ivey*, 832 F.2d at 954–55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (finding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (finding that verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to

18

support his claim under the Eighth Amendment.").  Accordingly, any disrespect inherent in Defendant Quinn's comments regarding Plaintiff's religion and any threat implicit in Defendant Quinn's statements regarding Plaintiff's mail do not rise to the level of an Eighth Amendment violation.  The First Amendment implications of those encounters are considered below.

### D.    Free Exercise Claim

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend I.  The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment.  *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right.  *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has alleged that he is a Luciferian and that he intended to conduct a "ritual for Lilith" on July 30, 2021.  (Compl., ECF No. 1, PageID.3–4.)  Plaintiff does not explain the nature of the ritual, but he does claim that he could not conduct the ritual because "there was toilet

water on the floor." (*Id*., PageID.3.)  Plaintiff claims Defendant Quinn prevented Plaintiff's ritual practice because "Quinn refused me cell clean up."  (*Id*.)

The Court will presume that Plaintiff's ritual is part of a sincerely held religious beliefs and is a religious practice.  The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief. . . ."  *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice. . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross."  *Id.* at 736.  "[A] 'substantial burden' must place more than an inconvenience on religious exercise."  *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)).  A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult. . . ."  *Id.*

Based on Plaintiff's allegations, it appears that the barrier to the practice of his ritual was the toilet water on the floor.  Plaintiff does not contend that Defendant Quinn played any role in causing the toilet water to be on the floor.  At most, Plaintiff's allegations show that Defendant Quinn did not allow Plaintiff "cell clean up" at the moment that Plaintiff asked.  It is not clear from Plaintiff's allegations why he could not perform the ritual in the presence of the toilet water, why Plaintiff could not clean up the cell on his own without "cell clean up," or for how long Plaintiff

was prevented from performing the ritual in the absence of Defendant Quinn permitting "cell clean up."  Accordingly, the Court concludes that Plaintiff's sparse factual allegations do not suffice to show that Defendant Quinn substantially burdened Plaintiff's free exercise of his religion. Accordingly, Plaintiff's free exercise claim is properly dismissed.

###    E.    Claim Regarding Mail

Plaintiff alleges that Defendant Quinn told Plaintiff that he threw away Plaintiff's mail and returned books mailed to Plaintiff to the mailroom.  There are a number of constitutional rights that might be implicated by a prison official's interference with a prisoner's incoming mail.[3] "A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 501 U.S. 410, 427 (1993) ("[T]he use of the mails is as much a part of free speech as the right to use our tongues." (internal quotation marks omitted))).

But a prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]."  *Martin v. Kelley*, 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78 (1987).  It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of

---

[3] Several of those constitutional protections apply only to "legal mail."  In *Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003), the Sixth Circuit Court of Appeals considered multiple potential sources of protection for legal mail, including the Sixth Amendment right to counsel, the First Amendment right to petition for redress of grievances, the First Amendment right of access to the courts, and the prisoner's general interest in protecting the attorney-client privilege.  Plaintiff does not allege that the mail at issue here was "legal mail;" so these additional layers of constitutional protection are not at issue in Plaintiff's complaint.

many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (*citing Pell,* 417 U.S. at 822–23; *Procunier v. Martinez*, 416 U.S. 396, 412 (1974)).

Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. at 78. And the possibility that incoming mail might introduce contraband into the prison is so obvious that courts have routinely upheld the right of prison officials to inspect incoming mail for contraband despite First Amendment free speech protection. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 574–76 (1974).

For the same reasons, a prison official's inspection of incoming mail does not violate the Fourth Amendment. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.") This Court has concluded that the reasoning in *Hudson* applies to a prisoner's incoming mail. *Hubbard v. Mann*, No. 2:21-cv-55, 2021 WL 2845099, at *9 (W.D. Mich. Jul. 8, 2021).

The MDOC inspects incoming mail for contraband and disposes of or returns mail that is, or contains, contraband pursuant to Policy Directive 05.03.118 (eff. Mar. 1, 2018). The Supreme Court has held that "a prison inmate retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822. Prisoners' free speech rights are "uncontrovertedly

limited by virtue of [their] incarceration." *Thaddeus-X*, 175 F.3d at 393.  Prison officials may impinge on these constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89.

To determine whether prison restrictions on mail are reasonably related to a legitimate penological interest, the Court must assess the restriction by reference to the following factors:  (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89–90.  Applying this standard, the Supreme Court has upheld a variety of limitations on First Amendment protections.  *See Shaw*, 532 U.S. at 229 (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners) (quoting *Pell*, 417 U.S. at 822 (sustaining proscriptions on media interviews)); *Thornburgh*, 490 U.S. at 419 (applying *Turner* standard to a prison ban on certain publications); *Turner*, 482 U.S. at 93 (restricting inmate-to-inmate correspondence); *see also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 133 (1977) (upholding prohibition on prisoner labor unions).

In *Thornburgh*, 490 U.S. 401, the Supreme Court addressed whether the Federal Bureau of Prisons' restrictions on various sources and types of incoming publications violated the First Amendment.  The Court upheld a regulation that barred, among other things, all "sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity." *Id.* at 405 n.5.  The Court recognized

the legitimacy of the prison's security interest, observing that incoming communications addressed to a general audience, which were likely to circulate, had the capacity to create "coordinated disruptive conduct." *Id.* at 412.   Applying the *Turner* standard to both facial and as-applied challenges, the Court concluded that a Bureau of Prisons' ban on certain types and sources of publications withstood a facial challenge but was unconstitutional as applied to certain exclusions at issue in the case. *Id.* at 404.   In considering the availability of alternative means of exercising the right, the Court indicated that the "'right' in question must be viewed sensibly and expansively." *Id.* at 417.   Applying that principle, the Court found that the availability-of-alternative-means inquiry was satisfied because "the regulations permit a broad range of publications to be sent, received, and read." *Id.* at 418.   Finally, in determining whether there existed obvious, easy alternatives to the restriction, the *Thornburgh* Court recognized that the fact that the regulation bears a reasonable relationship to the legitimate governmental interest is evidence that no obvious and easy alternative is available, and vice versa. *Id.*   The *Thornburgh* Court concluded that the "regulations, on their face, are not an 'exaggerated response' to the problem at hand:  no obvious, easy alternative has been established." *Id.*

In unpublished decisions, the Sixth Circuit has addressed challenges to prior versions of MDOC Policy Directive 05.03.118.  *See Ward v. Jones*, No. 02-1924, 2003 WL 1795736, at *1 (6th Cir. Mar. 31, 2003) (analyzing MDOC Policy Directive 05.03.118(EE)(14) (eff. Jan. 1, 2001), *amended* ¶ DD(14) (eff. Mar. 12, 2001) (prohibiting "photographs depicting actual or simulated sexual acts")).  Applying *Turner*, the *Ward* Court concluded that the 2001 policy was reasonably related to the legitimate penological interest of prison security.  *See Ward*, 2003 WL 1795736, at *2.

District courts also have upheld MDOC Policy Directive 05.03.118. *See Johnson v. Deeren*, No. 2:12-cv-205, 2012 WL 6019365, at *11–12 (W.D. Mich. Dec. 3, 2012) (finding that the restriction of Penthouse for including "sexual simulated acts" in MDOC Policy Directive 05.03.118(MM)(14) (eff. Sept. 14, 2009) was clearly related to a legitimate penological interest); *see also Houston v. Caruso,* No. 1:07-cv-960, 2008 WL 5235869, at *7 (W.D. Mich. Nov. 24, 2008) (upholding MDOC Policy Directive 05.03.118(HH)(15) (eff. Jan. 1, 2006), which, like the current policy, prohibited photographs depicting actual or simulated sexual acts by one or more persons).

Although the protections of the MDOC policy directive regarding prisoner mail are not necessarily coextensive with the protections of the First Amendment, it is apparent that there are circumstances where mail is properly rejected, and even disposed of, under the terms of the policy directive and that such disposal can be entirely consistent with the First Amendment rights retained by prisoners. Plaintiff's allegation that Defendant Quinn said he disposed of mail or returned mailed books to the mailroom, therefore, standing alone, does not suffice to state a First Amendment claim. And that allegation stands alone. Plaintiff offers no facts that would permit the Court to infer that the disposal or return of Plaintiff's mail was contrary to either the MDOC policy or Plaintiff's First Amendment rights. Accordingly, the First Amendment aspect of Plaintiff's claim regarding his mail is properly dismissed.

F.   **Due Process Claims**

Plaintiff mentions that Defendants' conduct violated his Fourteenth Amendment rights.

Considering the facts alleged regarding the damage to, disposal of, or taking of his property, and Defendant Quinn's purported false misconduct report, the Court liberally construes the reference to the Fourteenth Amendment to include claims that (1) one or more Defendants

25

deprived Plaintiff of his property without due process of law, and (2) Defendant Quinn deprived

Plaintiff of his liberty without due process of law by writing a false misconduct report.[4]

### 1.    Deprivation of Property

Plaintiff's claim that Defendants deprived him of property without due process of

law is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by*

*Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a

"random and unauthorized act" of a state employee has no federal due process claim unless the

state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy

exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at

537.  This rule applies to both negligent and intentional deprivations of property, as long as the

deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468

U.S. 517, 530–36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts

of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See*

*Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378

(6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden

requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir.

1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state

post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies

are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition

the institution's Prisoner Benefit Fund for compensation.  MDOC Policy Directive 04.07.112, ¶ B

---

[4] Plaintiff also suggests that Defendant Quinn discriminated against Plaintiff because of his religion.  Construed liberally, the Court interprets that allegation as invoking the Equal Protection Clause of the Fourteenth Amendment. That claim is considered below.

(eff. Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's due process claims are properly dismissed.

## 2.    Deprivation of Liberty

Plaintiff alleges that Defendant Quinn wrote a false "disobeying a direct order" misconduct report against Plaintiff.  Plaintiff was found not guilty of the offense.

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).  Under MDOC Policy Directive 03.03.105 (eff. July 1, 2018), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.  The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *Id*., at ¶ AAAA.

"Disobeying a direct order" is a Class II, or minor, misconduct under the MDOC disciplinary regime.  MDOC Policy Directive 03.03.105, ¶ B (eff. July 1, 2018).  Plaintiff could not have been denied good time or disciplinary credits as a result of a Class II misconduct convictions.  The Sixth Circuit routinely has held that misconduct convictions that do not result in

the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from the threat of a Class II misconduct conviction.

### G. Equal Protection

Plaintiff states that Defendant Quinn discriminated against Plaintiff for "being Luciferian." (Compl., ECF No. 1, PageID.4.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Because the crux of an equal protection violation is the treatment of similarly situated people differently, "[a] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant aspects.'" *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (quoting *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)). In other words, "the comparative [person] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [decision-maker's] treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff does not allege a similarly situated prisoner that Defendant Quinn treated differently. Plaintiff only suggests that Defendant Quinn treated him poorly. Plaintiff's

conclusory claim of an equal protection violation and mere suggestion of intentional discrimination does not suffice. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff's Fourteenth Amendment equal protection claim will, therefore, be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's claims against all Defendants other than Defendants Montie and Iordson for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). With regard to Defendants Montie and Iordson, the Court will dismiss all claims except Plaintiff's Eighth Amendment claim that Defendants Montie and Iordson used excessive force against Plaintiff on July 30, 2021. That is the only claim that remains in the case. Plaintiff's motion to appoint counsel (ECF No. 8) will be denied.

An order consistent with this opinion will be entered.


Dated:    February 18, 2022                    /s/ *Maarten Vermaat*
                                               Maarten Vermaat
                                               United States Magistrate Judge